# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RODNEY C., ) <br> ) <br>       Plaintiff, ) <br> ) <br>   v. ) <br> ) <br> ANDREW M. SAUL, Commissioner of the ) <br> Social Security Administration, [1] ) <br> ) <br>       Defendant. ) | No. 18-cv-08314 <br><br> Magistrate Judge Susan E. Cox |

## MEMORANDUM OPINION AND ORDER

Plaintiff Rodney C. ("Plaintiff")[2] appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits under the Social Security Act. Plaintiff's Brief in Support of his Motion to Reverse the Decision of the Commissioner of Social Security [15], which this Court construes as a motion for summary judgment, is GRANTED, and Defendant's Motion for Summary Judgment [dkt. 20] is DENIED. The Administrative Law Judge's decision is reversed and remanded for further proceedings consistent with this opinion.

**I. Background**

Plaintiff filed for Disability Insurance Benefits in October 2009, alleging he had a disability onset date of June 7, 2004. (R. 24, 154.) Plaintiff's application was denied by the state agency both initially and upon reconsideration. (R. 81-82.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which occurred on August 4, 2011. (R. 380.) On November, 2, 2011, the ALJ issued a written decision finding that Plaintiff was not disabled, and the Appeals Council denied

---

[1] As of June 4, 2019, Andrew M. Saul is the Commissioner of the Social Security Administration. Pursuant to Federal Rule Civil Procedure 25(d), he is hereby substituted as Defendant.

[2] In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by his first name and the first initial of his last name(s).

Plaintiff's request for review of that decision. (R. 1-3, 24-34.) Plaintiff appealed that decision to the United States District Court for the Northern District of Illinois; the Commissioner moved for Entry of Judgment with Remand, and the case was remanded for additional proceedings in September 2013. (R. 624.)

On remand, Plaintiff won a partially favorable decision; the ALJ found that Plaintiff was disabled from June 7, 2004 through December 31, 2008, but that the disability period ended on January 1, 2009. (R. 523-38.) Plaintiff appealed to the District Court again, and the decision was remanded again on the Commissioner's agreed motion for remand. (R. 990-92.)

On the second remand, ALJ Mathew Johnson held a hearing on August 31, 2017, and issued a decision finding that Plaintiff was not disabled, following the five-step analytical process required by 20 C.F.R. § 416.920. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from January 1, 2009 through March 31, 2014. (R. 873.) At step two, the ALJ concluded that Plaintiff had severe impairments of degenerative disc disease status-post surgical fusion, obesity, diabetes mellitus and associated peripheral neuropathy, obstructive sleep apnea, and hypertension. (R. 873.) At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 876.) The ALJ then determined that Plaintiff retained the Residual Functional Capacity ("RFC") to perform sedentary work, except he could not perform work requiring climbing ramps and stairs, balancing, kneeling, and crouching, more than occasional exposure to vibration, working around hazardous environments, or operating a motor vehicle. (R. 877.) At step four, the ALJ concluded that Plaintiff could not perform any of his past relevant work. (R. 883.) He also found that Plaintiff was a younger individual with "limited education," and that and is able to communicate in English. (R. 884.) At step five, based on the VE testimony and the findings about Plaintiff's age, education, work experience, and RFC, the ALJ concluded that

Plaintiff could perform jobs existing in significant numbers in the national economy, including packer, assembler, and inspector. (R. 885-86.) As such, the ALJ found that Plaintiff was not disabled under the Act. (R. 886.)

In finding that Plaintiff had "limited education," the ALJ determined that the "record does not convincingly support assertions of illiteracy." (R. 884.) In support of this ruling, the ALJ relied on the following facts: 1) Plaintiff's completion of the 11th grade; 2) his ability to grocery shop, pay bills, and visit social networking sites on the internet; 3) Plaintiff's acknowledgement that he could read at a "2nd grade level," 4) Plaintiff's 2009 Function Report indicated he could read at a 2nd grade level, but could pay bills, handle a savings account, and use a checkbook (R. 192-194), whereas his later records indicate greater difficulty reading, and 5) Plaintiff had previously worked as a delivery truck driver for many years before his alleged disability. (R. 884-85.)

At the hearing, the ALJ expressed skepticism that a person could complete the 11th grade and be illiterate. (R. 904-905.) The ALJ asked Plaintiff's attorney to locate the school records for Plaintiff for evidence that he was illiterate. (*Id.*) Plaintiff's attorney provided those records, but they were inconclusive. The ALJ noted that they showed a marking of "F" in the scholarship category, and implied that this showed that Plaintiff had struggled in school. However, the key at the bottom of the records shows that "F," counterintuitively, stands for "Fair or Acceptable Progress." (R. 1216.) However, those grades were for the first two grading periods of Plaintiff's high school career in October 1972 and February 1973. The records show that Plaintiff subsequently earned grades of "S" and "N" before being marked a "no show" in September 1975. Unfortunately, there is no indication of what "S" or "N" stand for in the key at the bottom of Plaintiff's scholastic records.

As for Plaintiff's ability to perform activities of daily living, Plaintiff testified that he was able to go shopping if his husband put pictures of the items on the shopping list, and that Plaintiff could not read the list himself. Although Plaintiff indicated that he visited social network sites on

3

the internet, the ALJ did not question him as to what such internet usage entailed, and the Court does not have any additional testimony from Plaintiff on that issue. (R. 189.) Plaintiff also testified that he would use something called a "street guide" to complete his delivery driving job, and would match the numbers on the guide to allow him to find the address; he stated that he could not read the words in the directions. (R. 930.) Furthermore, Plaintiff explained that he was able to pass his licensing examination to be a truck driver by using an audio recording that was available to people who stated that they could not read the examination. (R. 910.) Finally, the ALJ did not question Plaintiff on what he meant when claimed a 2nd grade reading level in 2009, but Plaintiff testified that he could only read small words, and could not read whole sentences. (R. 928.)

## II. Social Security Regulations and Standard of Review

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "reasonable minds could differ" as long as "the decision is adequately supported") (citation omitted).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but]

the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007). "An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning." *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

**III. Discussion**

At step five of the sequential analysis, the Commissioner has the burden of proving that jobs exist in the regional economy that a person of the claimant's vocational profile could perform. Educational attainment is one factor—together with age, work experience, and RFC—that an ALJ must consider in developing the vocational profile. 20 C.F.R. §§ 404.1560(c)(1), 404.1564. The regulations describe five categories of educational attainment, the first three of which are relevant here:

> **(1)** *Illiteracy.* Illiteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write *a simple message such as instructions or inventory lists* even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling.
>
> **(2)** *Marginal education*. Marginal education means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. We generally consider that formal schooling at a 6th grade level or less is a marginal education.
>
> **(3)** *Limited education*. Limited education means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through the 11th grade level of formal education is a limited education.

§ 404.1564(b) (emphasis added).

The numerical grade level of schooling completed may be used as a proxy for a claimant's educational abilities "if there is no other evidence to contradict it." 404.1564(b). However, "the fact and amount of formal schooling does not decisively foreclose a finding of illiteracy." *Cole v. Apfel,* No. 98 C 6735, 2000 WL 290432 (N.D. Ill. Mar. 17, 2000), citing *Glenn v. Secretary of Health and Human Serv.,* 814 F.2d 387, 389-90 (7th Cir.1987). *See also Yourek v. Barnhart,* 334 F. Supp. 2d 1090, 1092-1094 (N.D. Ill. 2004). Nor does the fact that a claimant has held a job in the past conclusively prove that he can read. *Gonis v. Astrue,* No. CIV. 12-309-CPJ, 2012 WL 596429 at *5-7 (S.D. Ill. Nov. 28, 2012) (even semi-skilled work was not proof of claimant's literacy when evidence showed that someone instructed him what to do at his job because he could not read). Where a claimant has raised an issue of potential illiteracy, the ALJ has an obligation to develop the record to determine the claimant's literacy level. *Yourek,* 334 F. Supp. 2d at 1093.

Here, the ALJ did not meet his obligation to adequately to develop a record that would build a logical bridge between the record and the ALJ's conclusion that Plaintiff was an individual of "limited education," as opposed to being illiterate. The main issue the Court sees with the ALJs opinion is his reliance on the 2009 Function Report, without probing what the Plaintiff meant when he wrote that he could only read at a 2nd grade level. The Court does not fault the ALJ with determining that the earlier 2009 Function Report was more accurate than the later Function Reports, which came after Plaintiff had begun his attempts to qualify for disability benefits. However, there were portions of the 2009 Function Report that raised questions as to whether Plaintiff is literate. As noted above, a person is considered illiterate if that person cannot "write a simple message such as instructions or inventory lists even though the person can sign his or her name." 20 C.F.R. § 404.1564(b). To the extent that the ALJ found that a second grader could write simple instructions and inventory lists, the Court is not sure how the ALJ came to that conclusion, because he did not build a logical bridge to support it. To the extent the ALJ found that Plaintiff's statement that he

6

could read at a 2nd grade level is not credible, but the other statements in the 2009 Function Report regarding Plaintiff's ability to handle checkbooks or pay bills are credible, the Court believes that such a finding would engage in the type of "cherrypicking" that courts routinely warn against performing. *See, e.g.*, *Dallosto v. Berryhill*, 2017 WL 4512558, at *6 (N.D. Ill. Oct. 10, 2017).

However, this is not the only problem with the ALJ's analysis regarding Plaintiff's literacy. For example, the ALJ did not consider the Plaintiff's explanations for how he was able to maintain employment as a delivery driver or how his husband assisted him with grocery shopping. While the ALJ was free to reject those explanations, he was not free to ignore them when they directly undermined crucial findings that he relied on to conclude that the Plaintiff was literate. Similarly, the Plaintiff's stated use of social media, without more, is not sufficient to support a finding that he could read. Anyone who has been on Facebook or Instagram knows that most of the content on social media consists of photographs and videos, not necessarily text. It is entirely possible that a person who is illiterate for the purposes of disability benefits (*i.e.*, cannot write instructions or inventory lists) could use social media to scroll through images and videos. Instead, the ALJ relied on Plaintiff's use of social media to support his finding without asking the necessary questions of Plaintiff at the hearing to develop a sufficient record to determine whether Plaintiff's use of social media was indicative of literacy. In short, the ALJ failed to adequately develop the record to determine whether Plaintiff's activities tended to show that he had sufficient literacy skills to qualify as an individual of "limited education," and also failed to consider certain unfavorable evidence that would need to be analyzed to build a logical bridge between the record and his conclusions. As such, the Court finds that the ALJ committed reversible error.

## CONCLUSION

Plaintiff's Brief in Support of his Motion to Reverse the Decision of the Commissioner of Social Security [15] is GRANTED and Defendant's Motion for Summary Judgment [dkt. 20] is

DENIED. The Administrative Law Judge's decision is reversed and remanded for further proceedings consistent with this opinion.


Entered: October 29, 2019

_____
U.S. Magistrate Judge, Susan E. Cox